UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**HEWLETT-PACKARD FINANCIAL
SERVICES COMPANY,**

      **Plaintiff,**

v.                                                           Case No:  6:14-cv-60-Orl-36DAB

**BREVARD COUNTY CLERK OF THE
CIRCUIT COURT, BLUEGEM LLC,
ROSE HARR and CARUSO,
SWERBILOW & CAMEROTA, P.A.,**

      **Defendants.**

_____

## ORDER

This cause comes before the Court on the Report and Recommendation of Magistrate Judge David A. Baker, filed on February 19, 2014 (Doc. 43).  In the Report and Recommendation, Magistrate Judge Baker recommends that the case be dismissed, without prejudice to prosecution in a state forum, for lack of subject matter jurisdiction.  *See id.* at 11.  On March 5, 2014, Plaintiff Hewlett-Packard Financial Services Company ("Plaintiff") filed an Objection to the Report and Recommendation (Doc. 44), and the time for Defendants to file a response to the Objection has expired.  As such, this matter is ripe for review.

**I.  BACKGROUND**

This action arises from an alleged failure by Defendant "Brevard County Clerk of the Circuit Court" (the "Clerk") to perform under a promissory note it entered into with Plaintiff (the "Note").  *See* Doc. 18 ¶¶ 8–21.  The Note served as consideration for $6,100,000 in financing provided by Plaintiff to the Clerk in connection with the Clerk's acquisition of computer software, equipment, and digital imaging services.  *Id.* ¶ 11.  The Clerk acquired the computer software,

equipment, and digital imaging services for the purpose of "digitiz[ing] old paper court files." *Id.* ¶ 9. Defendant BlueGem LLC ("BlueGem") is a vendor that worked with the Clerk to locate the needed products and services and assisted in negotiating the terms of the financing transaction between the Clerk and Plaintiff. *Id.* ¶¶ 8–11. During the relevant time period, Defendant Rose Harr ("Harr") was the Chief Executive Officer ("CEO") of BlueGem, and she served as its agent in negotiating the financing transaction. *Id.* ¶¶ 4, 59.

Before entering into the financing transaction, Plaintiff required the Clerk to obtain legal opinion letters stating that the Clerk had the power and authority to enter into the transaction and that the closing documents constituted a legal, valid, and binding obligation of the Clerk. *Id.* ¶ 32. To comply with this precondition, the Clerk retained Defendant Caruso, Swerbilow & Camerota, P.A. ("CSC"), which, through its partner, Joe Teague Caruso ("Caruso"), provided said opinion letters. *Id.* ¶¶ 31–32.

On July 23, 2013, Plaintiff filed a Complaint in this Court against the Clerk for failure to perform its obligations under the Note. *See* Doc. 1. On December 2, 2013, Plaintiff filed an Amended Complaint, this time adding alternative claims against CSC for professional malpractice, negligent misrepresentation, and breach of fiduciary duty arising out of CSC's issuance of the legal opinion letters. *See* Doc. 18 ¶¶ 30–57. The Amended Complaint also added an alternative claim against BlueGem and Harr for fraudulent inducement arising out of their alleged misrepresentations in negotiating the financing transaction. *See id.* ¶¶ 58–65. The Amended Complaint purported to invoke this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), as Plaintiff asserted that there was complete diversity between the parties and that the amount in controversy exceeded $75,000. *Id.* ¶ 6. In alleging the citizenship of the parties, Plaintiff asserted that it was a Delaware corporation with its principal place of business in New

Jersey, that the Clerk was a political subdivision of the State of Florida, that BlueGem was a Florida limited liability company with its principal place of business in Florida, that Harr was a Florida citizen, and that CSC was a Florida professional association with its principal place of business in Florida. *Id.* ¶¶ 2–5.

On January 23, 2014, Magistrate Judge Baker issued an Order (the "Order to Show Cause") directing Plaintiff to show cause why the case should not be dismissed for lack of subject matter jurisdiction. *See* Doc. 36. Specifically, the Magistrate Judge observed that Plaintiff had failed to identify the State of citizenship of each member of BlueGem and CSC, as is required with respect to limited liability companies and professional associations. *Id.* at 2–3. In addition, the Magistrate Judge opined that Plaintiff had failed to show that the Clerk was amenable to being sued in this Court pursuant to diversity jurisdiction, citing the principle that an "arm or alter ego" of a State is not a "citizen of a State" for diversity purposes. *Id.* at 3 (citing *Moor v. Alameda Cnty.*, 411 U.S. 693, 717 (1973)). The Magistrate Judge pointed to a Florida Supreme Court case which held that clerks of the circuit courts, "when acting under the authority of their article V powers concerning judicial records and other matters relating to the administrative operation of the courts, are an arm of the judicial branch and are subject to the oversight and control of the Supreme Court of Florida." *Id.* (citing *Times Publ'g Co. v. Ake*, 660 So. 2d 255, 257 (Fla. 1995)).

On February 6, 2014, Plaintiff filed a response to the Order to Show Cause, asserting that since Harr was the CEO of BlueGem, and because Plaintiff "kn[ew] of no other members of BlueGem other than Harr," BlueGem was a citizen of Florida. Doc. 40 at 2. Plaintiff also argued that Harr and BlueGem had admitted that the Court had diversity jurisdiction in their Answer to the Amended Complaint. *Id.* (citing Doc. 27 ¶ 6). As to CSC, Plaintiff averred that it "kn[ew] of no other members of CSC other than Caruso," and that it appeared that Caruso was a citizen of

3

Florida because CSC's website indicated that he practiced law in Brevard County, Florida. *Id.* at 3. As to the Clerk, Plaintiff argued that the Clerk had admitted that the Court had diversity jurisdiction in its Answer to the Amended Complaint. *Id.* (citing Doc. 21 ¶¶ 2, 6). Plaintiff also cited to a provision of the Florida Constitution requiring counties to fund the cost of "communications services," and made the argument that in entering into the Note, the Clerk was implementing the duties of Brevard County to fund communications services for the Eighteenth Judicial Circuit. *Id.* at 5. Accordingly, Plaintiff asserted that the Clerk was acting for Brevard County, rather than as an arm of the judicial branch. *Id.* at 5–6. Finally, Plaintiff requested that, if the Court were not convinced that diversity jurisdiction existed, Plaintiff be granted leave to conduct jurisdictional discovery and file a Second Amended Complaint. *Id.* at 6–7.

On February 19, 2014, Magistrate Judge Baker issued a Report and Recommendation, recommending that the case be dismissed for lack of subject matter jurisdiction. *See* Doc. 43. For one, the Magistrate Judge found that Plaintiff had provided insufficient information as to the citizenship of BlueGem and CSC. *Id.* at 3–5. In addition, the Magistrate Judge concluded that the Clerk, in entering into the financing transaction, was acting pursuant to its authority under Article V of the Florida Constitution concerning judicial records. *Id.* at 9. Accordingly, the Clerk was acting as an arm of the judicial branch of the State of Florida, and could not be considered a "citizen of a State" for diversity purposes. *Id.* at 10–11. As such, Plaintiff failed to demonstrate the existence of diversity jurisdiction. *Id.* at 11. Moreover, the Magistrate Judge opined that granting Plaintiff leave to obtain jurisdictional discovery or to file a Second Amended Complaint would be futile, given that Plaintiff could not establish that the Clerk was a "citizen of a State." *Id.* at 11 n.6.

The instant Objection followed. *See* Doc. 44.

4

**II.     STANDARD OF REVIEW**

When a party makes a timely and specific objection to a Magistrate Judge's Report and Recommendation, the district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *Jeffrey S. v. State Board of Education of State of Georgia*, 896 F.2d 507, 512 (11th Cir. 1990). The district judge may accept, reject, or modify in whole or in part, the Report and Recommendation of the Magistrate Judge. Fed. R. Civ. P. 72. The district judge may also receive further evidence or recommit the matter to the Magistrate Judge with further instructions. *Id*.

**III.    DISCUSSION**

Although Plaintiff enumerates eleven "objections" to the Report and Recommendation, the first eight objections pertain to the Magistrate Judge's conclusion that the Clerk is not a "citizen of a State" for diversity purposes. *See* Doc. 44 at 4–15. Plaintiff's remaining objections take issue with the Magistrate Judge's recommendation that the case be dismissed and that Plaintiff not be permitted to obtain jurisdictional discovery as to the citizenship of BlueGem and CSC. *See id.* at 15–20. For the reasons discussed below, the Court agrees with the Magistrate Judge that the Clerk is not a "citizen of a State" and that dismissal of this action is therefore appropriate.

It is well-established that a State is not a "citizen" for purposes of diversity jurisdiction. *Moor*, 411 U.S. at 717. However, a *political subdivision* of a State is a citizen of the State for diversity purposes, unless the political subdivision is simply "the arm or alter ego of the State." *Id*. Therefore, the Magistrate Judge correctly recognized that the jurisdictional issue in this case is whether the Clerk is an "arm or alter ego" of the State of Florida. If the Clerk is merely an "arm or alter ego" of the State, it is not a citizen of the State, and diversity jurisdiction cannot be invoked.

In determining whether the Clerk is an "arm or alter ego" of the State of Florida, the Court must ascertain how the Clerk's functions are characterized under Florida law. *Stewart v. Baldwin Cnty. Bd. of Educ.*, 908 F.2d 1499, 1509 (11th Cir. 1990). As the Magistrate Judge noted, the clerks of Florida's circuit courts derive their powers and authority from two articles of the Florida Constitution. *Times Publ'g Co. v. Ake*, 645 So. 2d 1003, 1004 (Fla. 2d Dist. Ct. App. 1994), *aff'd and approved*, 660 So. 2d 255 (Fla. 1995). Within Article V, pertaining to Florida's judicial framework, Section 16 establishes, in each county, the office of clerk of the circuit court. Fla. Const. art. V, § 16. Within Article VIII, pertaining to local government, Section 1(d) provides that circuit court clerks are to be elected in county elections and that each clerk is the "ex officio clerk of the board of county commissioners, auditor, recorder and custodian of all county funds." Fla. Const. art. VIII, § 1(d). Thus, Article V is the source of a clerk's judicial activities, while Article VIII enumerates a clerk's nonjudicial duties. *Ake*, 645 So. 2d at 1005.

The Florida Supreme Court has held that "the clerks of the circuit courts, when acting under the authority of their article V powers concerning judicial records and other matters relating to the administrative operation of the courts, *are an arm of the judicial branch* and are subject to the oversight and control of the Supreme Court of Florida, rather than the legislative branch." *Ake*, 660 So. 2d at 257 (emphasis added). In this case, there can be no serious dispute that, in entering into the financing transaction, the Clerk was acting pursuant to its authority under Article V "concerning judicial records and other matters relating to the administrative operation of the courts." *Id.* Indeed, Plaintiff's Amended Complaint indicates that the Clerk was seeking to acquire computer software, equipment, and digital imaging services so that it could "digitize old paper court files." Doc. 18 ¶ 9. This judicial recordkeeping function clearly falls within the ambit of Article V. Here, the Clerk was acting as an arm of Florida's judicial branch, *not* as a political

subdivision of the State of Florida. *Ake*, 660 So. 2d at 257. Therefore, the Clerk is not a "citizen" of a State" for purposes of diversity jurisdiction. *See Moor*, 411 U.S. at 717; *Dacey v. Florida Bar, Inc.*, 414 F.2d 195, 197–98 (5th Cir. 1969)[1] (holding that the Florida Bar was an integral part of the judicial branch, and therefore was not a "citizen" for purposes of diversity jurisdiction). Plaintiff's objections on this issue are without merit.

Moreover, because it is clear that the Clerk is not a "citizen" for diversity purposes, granting Plaintiff leave to amend its complaint or obtain jurisdictional discovery as to BlueGem and CSC would be futile. Therefore, the Court agrees with the Magistrate Judge that this case should be dismissed, without prejudice to prosecution in a state forum.

Accordingly, it is hereby **ORDERED and ADJUDGED**:

1. The Report and Recommendation of the Magistrate Judge (Doc. 43) is adopted, confirmed, and approved in all respects and is made a part of this Order for all purposes, including appellate review.

2. This action is **DISMISSED**, without prejudice to prosecution in a state forum.

3. The Clerk is directed to terminate any pending motions and deadlines and close this case.

**DONE** and **ORDERED** in Orlando, Florida on April 15, 2014.

Charlene Edwards Honeywell
United States District Judge

---

[1] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

Copies furnished to:

Counsel of Record
Unrepresented Parties